# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4371-17T3

J.L.L.,

    Plaintiff-Respondent,

v.

C.M.H.,

    Defendant-Appellant.

_____

Submitted April 3, 2019 – Decided July 15, 2019

Before Judges Accurso and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0740-18.

The Tormey Law Firm LLC, attorneys for appellant (Brent Di Marco, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant C.M.H. appeals from a Family Part final protective order entered against him under the Sexual Assault Survivor Protection Act of 2015

(SASPA), N.J.S.A. 2C:14-13 to -21.  He argues the trial court erred by admitting highly prejudicial evidence and that the court's findings were not supported by the record evidence.  Since the court's findings are well-supported and it did not consider the evidence defendant avers was erroneously admitted, we affirm.

The trial court fully appreciated that the issuance of a SASPA protective order requires proof by a preponderance of the evidence that "one or more acts of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, [occurred] against the alleged victim; and [that there is] the possibility of future risk to the safety or well-being of the alleged victim." N.J.S.A. 2C:14-16(a)(1), (2).

Based on J.L.L.'s testimony which the court found credible, the court found that after J.L.L. enrolled in an intensive outpatient drug treatment clinic at which defendant was a director who oversaw J.L.L.'s counselors, and despite having a number of prior consensual sexual encounters with defendant, defendant coerced J.L.L. to perform fellatio – an act of sexual contact, N.J.S.A. 2C:14-3(b); N.J.S.A. 2C:14-2(c)(1)[1] – on him in his clinic office on five

_____

[1] The statutes provide an actor is guilty of sexual contact if he commits an act of sexual contact with another person and the actor uses physical force or coercion, but the victim does not sustain severe personal injury.  "'Sexual contact' means an intentional touching by the victim or actor, either directly or

A-4371-17T3

occasions. The court determined the nonconsensual acts of fellatio were coerced[2] by defendant's threats

> that she could not stay in the clinic if the sex did not continue, and that [J.L.L.] had to comply with [defendant] having her come to the office or he would inform [her] baby's father regarding information [defendant] had. She further testified that she was fearful of [defendant], that [he] not only has this director position of the [intensive outpatient] clinic, that he had the authority to throw her or remove her from the clinic which would interfere with the ability to maintain her methadone maintenance.

The court concluded it was "objective[ly] and subjectively reasonable" for J.L.L. to conclude that defendant, as director, would have the authority to remove her from the clinic.

The court found defendant coerced J.L.L. to fellate him based on her testimony that defendant threatened to inform her "daughter's father" regarding

---

through clothing, of the victim's or actor's intimate parts for the purpose of degrading or humiliating the victim or sexually arousing or sexually gratifying the actor." N.J.S.A. 2C:14-1(d). Intimate parts includes sexual organs. N.J.S.A. 2C:14-1(e). Defendant does not argue that the alleged act did not constitute criminal sexual contact. We note fellatio is, in fact, sexual penetration. N.J.S.A. 2C:14-1(c).

[2] The definition of coercion is derived from the criminal acts set forth in N.J.S.A. 2C:13-5(a)(1), (2), (3), (4), (6) and (7). N.J.S.A. 2C:14-1(j). Defendant does not argue that the acts found by the judge did not meet the definition.

A-4371-17T3

J.L.L.'s desire to obtain custody of her three-year-old daughter – information with which she had "trusted" defendant – if she did not comply with defendant's demands for oral sex. The court also considered J.L.L.'s testimony that she was fearful of defendant because he told her "he had committed murders. That he was in the Blood gang. That he had no remorse. He had told [her] that he was going to come to [her] house and blow up [her] shit." Texts sent by defendant to J.L.L. were also introduced in which defendant told her he: "used to steal cars"; was "a Blood"; "killed a guy by mistake last year when [he] was stealing a car. It was a hit and run"; has "a fucked up past"; was "still with the Southside cartel"; had in "June of [2017] . . . killed [his] cousin's rapist in [the] Dominican Republic. [He] shot him point blank in his shit. [His] intent was not to kill him but to make him suffer for raping [his nine] year-old cuz. He bled out but [defendant did not] feel bad about that. [The rapist] deserved it. [Defendant did not] have remorse for that at all."

The evidence led to the trial court's conclusion that J.L.L.'s "fears of . . . [d]efendant developed further from not only his role at the clinic and his ability to impact her access to the [clinic] program, [J.L.L.] was fearful of . . . [d]efendant on a personal level as well." The court had "no doubt" that J.L.L. believed the threats and communications which he characterized as intimidating

tactics done repetitively and "with conviction in the manner that they were delivered."

The court also considered the "interaction between [the parties], the threats and the controlling nature" in finding that the protective order was necessary to protect J.L.L. "from further acts of danger . . . going forward."

We defer to the trial court's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co., 65 N.J. 474, 484 (1974). Our review of the record establishes that the court's findings of fact were fully supported by the record and are entitled to our deference. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998).

Defendant contends that J.L.L.'s version of events is not credible and could not establish the predicate act necessary for, or otherwise justify, the issuance of the order. The trial court, however, found defendant's testimony – including his denial of threats to J.L.L., the occurrence of sex acts inside the clinic and any non-consensual sex – incredible. Our deference is particularly necessary when "the evidence is largely testimonial and involves questions of credibility." Cesare, 154 N.J. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). We rely "on the trial court's acceptance of

the credibility of . . . testimony and the court's fact-findings based thereon, noting the trial court is better positioned to evaluate the witness' credibility, qualifications, and the weight to be accorded to [his or] her testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999).  We discern no reason to disturb the trial court's supported factual findings and legal conclusions. Rova Farms, 65 N.J. at 484.

We are unpersuaded by defendant's argument that there was "insufficient proof that a future act of sexual conduct would occur" because the parties no longer have contact after defendant was fired.  The trial court based its finding that the second prong of N.J.S.A. 2C:14-16(a) – "the possibility of future risk to the safety or well-being of the alleged victim" – was satisfied by the "interaction" between the parties:  defendant's numerous threats.  The veiled and overt threats of violence and the suggestion he would reveal personal matters regarding her daughter to her daughter's father are untethered to any present interaction between the parties.  The evidence established "the possibility of future risk" to J.L.L.'s safety or well-being.

Defendant also contends "the admission of evidence relating to the alleged criminal investigation concerning [defendant] as well as the testimony surrounding another woman accusing [him] of similar acts and seeking an order

of protection was highly prejudicial and was contrary to the Rules of Evidence." Specifically, defendant argues the evidence of "other crimes" was improperly introduced during the trial. Although defendant did not specify the offending portions of the trial evidence, we note the following colloquy between J.L.L. and her counsel:

> [J.L.L.'s attorney]: Were you aware of any allegations or any word in the clinic that [defendant] was engaged in this type of [sexual] conduct with anybody else?
>
> [J.L.L.]: Yes, I was.
>
> Q. Okay. What did you become aware of?
>
> A. In December I had become aware that he had allegations that he had sexually touched another client. He was under investigation. He was not at the clinic at the time. They were reviewing his computer and such things as that. I was called in to speak – my name was said. I had denied it at the time.
>
> Q. Okay. Did you become familiar with a woman named [L.F.]?
>
> A. In the beginning of March, yes.
>
> Q. How did you become familiar with [L.F.]?
>
> A. After I had complained to the clinic about what was happening between [defendant] and I, I had to go to the police station. And at the police station, about the second time I was there getting interviewed, they had brought her name up about twice. I don't know who she

is personally. I just know of the name and that she was also one of the ladies that had come forward.

Q. Would you recognize her if you saw her?

A. Yes.

Q. Did you see her today in the courthouse?

A. Yes, I did.

Q. Did you understand why she was here today?

A. I'm assuming on the same –

Q. Similar circumstances as you?

A. Yes, a [r]estraining [o]rder.

Q. Okay. When the clinic superiors had approached you about what had been going on with [defendant] in early March, what happened to [defendant], as far as you know?

A. Before I was approached, he was fired maybe not even a week prior to that.

Q. Now, I want to ask you, [J.L.L.], with regard to the conduct of [defendant], did you – were you involved with any police investigation?

A. Regarding?

Q. Regarding [defendant]'s conduct?

A. Yes, I am.

Q. And with what police agency was that?

8

A.  The Denville Police.

Q.  And did you cooperate with the Denville Police?

A.  Yes, 100 percent.

Q.  Okay.  And you explained to the Denville Police everything that happened?

A.  Yes.

Q.  Okay. Do you know what has become of that investigation at this point?

A.  The last time I had spoken to them, they had told me that the Morris County Prosecutor's Office had all the evidence that was obtained and they were reviewing it to see if he was going to be charged with anything.

Our Supreme Court prescribed our mode of analysis:  "The threshold determination under Rule 404(b) is whether the evidence relates to 'other crimes,' and thus is subject to continued analysis under Rule 404(b), or whether it is evidence intrinsic to the charged crime, and thus need only satisfy the evidence rules relating to relevancy, most importantly Rule 403." State v. Rose, 206 N.J. 141, 179 (2011); see N.J.R.E. 403; N.J.R.E. 404(b).

Defendant, who was self-represented at trial, did not object when the testimony was introduced.  We, therefore, look to see if the admission of the evidence was "clearly capable of producing an unjust result," R. 2:10-2; that is, it "must be real [and] sufficient to raise a reasonable doubt as to whether [it] led

9

the [fact finder] to a verdict it otherwise might not have reached." State v. J.R., 227 N.J. 393, 417 (2017) (first and second alterations in original) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).

The evidence of the pending investigation by police and the Prosecutor's Office did not relate to "other crimes"; it related to the investigation of J.L.L.'s allegations against defendant. Jurors in criminal trials are instructed that an indictment is not evidence of a defendant's guilt and, notwithstanding the charging document, defendant is entitled to the presumption of innocence. Model Jury Charges (Criminal), "Preliminary Instructions to the Jury" (rev. June 12, 2014); Model Jury Charges (Criminal), "Presumption of Innocence" (approved Oct. 26, 1992). We are confident a Superior Court judge, sitting as a fact finder, recognized that a mere investigation is not evidence of wrongdoing in light of the presumption of innocence. See In re Winship, 397 U.S. 358, 363 (1970) (stating that "[t]he [reasonable-doubt] standard provides concrete substance for the presumption of innocence—that bedrock 'axiomatic and elementary' principle whose 'enforcement lies at the foundation of the administration of our criminal law'" (quoting Coffin v. United States, 156 U.S. 432, 453 (1895))); see also State v. Hill, 199 N.J. 545, 559 (2009).

The evidence of defendant's sexual abuse of another clinic patient is "bad acts" testimony that, prior to admission, should have been analyzed pursuant to the Court's instruction in Rose. "Where the occurrence of a prior bad act is disputed, 'a plenary evidentiary hearing (see N.J.R.E. 104) is held to determine whether the prior bad act occurred, and whether the party against whom the evidence is sought to be admitted actually committed the prior bad act.'" State v. Beckler, 366 N.J. Super. 16, 29 (App. Div. 2004) (quoting State v. Moorman, 286 N.J. Super. 648, 661 (App. Div. 1996)).

Absent the proponent's proffer regarding the relevance and purpose for such evidence under Rule 404(b), and without the facts of the other allegations being developed at a Rule 104 hearing, we are unable to analyze whether J.L.L.'s

testimony was admissible as intrinsic evidence[3] or if it fulfilled the four-prong

Cofield test justifying admission under Rule 404(b).[4]

---

[3] There are two categories of intrinsic evidence:

> First, evidence is intrinsic if it "directly proves" the charged offense. This gives effect to Rule 404(b)'s applicability only to evidence of "other crimes, wrongs, or acts." If uncharged misconduct directly proves the charged offense, it is not evidence of some "other" crime. Second, "uncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime."
>
> [United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010) (citations omitted).]

see also Rose, 206 N.J. at 180 (adopting Green's intrinsic evidence definition).

[4] In State v. Cofield, the Court articulated a four-part test to determine if evidence of uncharged acts is admissible at trial:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.

The trial court made no mention of the allegations regarding L.F. in its findings. Inasmuch the record does not reflect that the court considered evidence of the allegations of defendant's assault of L.F. for any purpose, including the court's credibility findings, the admission of the evidence did not impact on the court's decision and did not lead to an unjust result.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[127 N.J. 328, 338 (1992) (quoting Abraham P. Ordover, Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b) And 609(a), 38 Emory L.J. 135, 160-61 (1989)).]

A-4371-17T3